# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

CHUN YING LIN, et al.,

          Plaintiffs,

   v.

ONE COCO NAILS & SPA INC.,

          Defendant.

CIVIL ACTION NO. 3:20-CV-01509

(MEHALCHICK, M.J.)

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant One Coco Nails & Spa Inc. ("Coco") and a motion for partial summary judgment filed by Plaintiff Chun Ying Lin ("Lin"). (Doc. 18; Doc. 21). Plaintiffs Lin and Qin Liang Chen ("Plaintiffs") bring this action under the Fair Labor Standards Act of 1983 ("FLSA"); the Pennsylvania Wage Payment and Collection Law 43 ("WPCL"); the Pennsylvania Minimum Wage Act of 1968, as amended in 2006 ("MWA"); and Pennsylvania state law for wrongful termination. (Doc. 1, at 1-2). In its motion for summary judgment, Defendant Coco claims that it is entitled to judgment as a matter of law and that no material facts remain in dispute as to all of Plaintiffs' claims. (Doc. 18, at 1-2). In Plaintiff Lin's motion for partial summary judgment, she claims that she is entitled to judgment as a matter of law and that no material facts remain in dispute regarding her claims for violations of FLSA, MWA, and WPCL. (Doc. 21, at 3). For the reasons set forth herein, Defendant Coco's motion for summary judgment (Doc. 18) shall be **GRANTED in part and DENIED in part** and Plaintiff Lin's motion for partial summary judgment (Doc. 21) shall be **DENIED**.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

   A.   DEFENDANT COCO

   This factual background is taken from Coco's statement of material facts and accompanying exhibits. (Doc. 19). Pursuant to Local Rule 56.1, Plaintiffs have provided their response to Coco's statement of facts and have provided accompanying exhibits. (Doc. 24). Where Plaintiffs dispute facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record demonstrates a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Plaintiffs as the non-moving parties, with all reasonable inferences drawn in their favor.

   Plaintiff Lin filed a complaint on August 24, 2020, which contains four counts: Count I – Fair Labor Standards Act Violations, Count II – Pennsylvania Wage Payment and Collection Law Violations, Count III – Pennsylvania Wage Act Violations, and Count IV – Wrongful Termination. (Doc. 1; Doc. 19, ¶ 1; Doc. 24, ¶ 1). Approximately seven (7) months later, Chen filed a complaint, which contains two counts: Count I – Fair Labor Standards Act Retaliation and Count II – Wrongful Termination. (Doc. 19, ¶ 2; Doc. 24, ¶ 2); *see Chen v. One Coco Nails & Spa, Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF No. 1.

   Lin does not speak English, nor read English. (Doc. 19, ¶ 3; Doc. 20-5, at 6, 14; Doc. 24, ¶ 3). Lin was aware that a complaint had been filed on her behalf, but stated that she had never seen the complaint until the time of her deposition as she does not speak or read

English.[1] (Doc. 19, ¶ 4; Doc. 20-5, at 6). Lin resides in Brooklyn, New York, and not Clarks Summit, Pennsylvania as is indicated in Lin's Complaint.[2] (Doc. 19, ¶ 5; Doc. 20-5, at 7-8).

Lin was employed at Coco in April of 2019 until December of 2019. (Doc. 19, ¶ 6; Doc. 24, ¶ 6; Doc. 20-5, at 11, 19). Paragraph 12 of Lin's complaint alleges Lin's rate of pay was Two Dollars and Eighty-Nine Cents ($2.89) from April of 2019 until December 28, 2019. (Doc. 1, at 3; Doc. 19, ¶ 7; Doc. 24, ¶ 7). Paragraph 14 of Lin's complaint states that "[a]ny and all customer tips were taken by management. The Plaintiff did not receive tips." (Doc. 1, at 3; Doc. 19, ¶ 8; Doc. 24, ¶ 8). Lin was told that she would be paid One Hundred Dollars ($100.00) per day and once she received her license, she was paid One Hundred Ten Dollars ($110.00) per day. (Doc. 19, ¶ 9; Doc. 20-5, at 17-18; Doc. 24, ¶ 9). Lin was paid Seven Hundred Dollars ($700.00) every two (2) weeks. (Doc. 19, ¶ 10; Doc. 20-5, at 18; Doc. 24, ¶ 10). A text exchange between Lin and Yi Ping Chen (hereinafter "Eva"), the owner of Coco, revealed that Lin was hired to start working for Coco April 10, 2019, for One Hundred Dollars ($100.00) per day, which would increase to One Hundred Ten Dollars ($110.00) per day once she received her license, together with tips. (Doc. 19, ¶ 11; Doc. 20-5, at 17-18; Doc. 20-8, at 9, 11-12). Eva paid her employees Seven Dollars and Twenty-Five Cents ($7.25) per hour for the first eight (8) hours and the last two (2) hours that hourly amount was raised to Twenty-One Dollars ($21.00) as overtime and that her employees collected all the tips but if a

---

[1] Plaintiffs deny this fact as stated and add that Lin was not asked if the complaint had been reviewed with her and that this fact is not material. (Doc. 24, ¶ 4).

[2] Plaintiffs admit this fact but state that a dispute about the accuracy of the address stated in her complaint does not constitute a material fact pertaining to Coco's motion. (Doc. 24, ¶ 5).

customer's tip was below fifteen percent (15%), Eva would make up to fifty percent (50%) of the tip.[3] (Doc. 19, ¶ 12; Doc. 20-8, at 8-9, 12). Coco's employees also received commissions.[4] (Doc. 19, ¶ 13; Doc. 20-8, at 11). Tips paid in cash by clients were Lin's and she received tips. (Doc. 19, ¶ 14; Doc. 20-5, at 19; Doc. 24, ¶ 14).

Paragraph 44 of Lin's complaint alleges that Coco's conduct in terminating Lin was in retaliation for reporting serious crimes, such as human trafficking. (Doc. 1, at 11; Doc. 19, ¶ 15; Doc. 24, ¶ 15). Numerous anonymous calls were received through Homeland Security Investigations' human trafficking hotline regarding Coco which were later admitted to have been made by Chen. (Doc. 19, ¶ 16; Doc. 20-2, at 4-10; Doc. 20-7, at 5-6; Doc. 24, ¶ 16). After conducting several investigations based upon these calls, the Pennsylvania State Police terminated the investigation, to no avail.[5] (Doc. 19, ¶ 17; Doc. 20-2, at 10).

Lin was let go from Coco in 2019 because she was not performing in her capacity as a nail technician.[6] (Doc. 19, ¶ 18; Doc. 20-5, at 20-21; Doc. 20-8, at 13). Lin quit her

---

[3] Plaintiffs deny this fact and argue that although Eva testified as to these facts, Lin's wage of $700.00 every two weeks proves this to be an inaccurate statement. (Doc. 22-2, at 7; Doc. 24, ¶ 12)

[4] Plaintiffs deny this fact and argue that although Lin was promised $100.00 to $110.00 per day, she was paid a flat $700.00 every two weeks even though she worked 120 hours during the two-week period which is less than minimum wage. (Doc. 22-2, at 7; Doc. 24, ¶ 13)

[5] Plaintiffs deny this fact as stated and contend that it appears that the Pennsylvania State Police opened several investigations, all to case number PA2019-1180845. (Doc. 24, ¶ 17; Doc. 20-2, at 4-10).As of May 22, 2020, the Pennsylvania State Police terminated their investigation at a time when Coco was closed due to the pandemic related mandatory shut down. (Doc. 24, ¶ 17; Doc. 20-2, at 10).

[6] Plaintiffs deny this fact and argue that Lin's job performance was a pretext for her termination. (Doc. 24, ¶ 18). Plaintiffs state that Coco knew of the complaints of human trafficking in September of 2019. (Doc. 20-2, at 4-10). Additionally, prior to December 28, 2019, Chen and Lin were good friends and Coco knew that Chen helped Lin call the police

employment from Coco because she did not do a good job on customers' nails.[7] (Doc. 19, ¶

19; Doc. 20-8, at 13). Lin has returned to New York where she is employed as a nail technician

earning One Hundred Fifteen Dollars ($115.00) per day. (Doc. 19, ¶ 20; Doc. 20-5, at 21;

Doc. 24, ¶ 20).

Paragraph 9 of Chen's complaint alleges Chen was employed at Coco from April of

2019 until December 28, 2019. (Doc. 19, ¶ 21; Doc. 24, ¶ 21); *Chen v. One Coco Nails & Spa,*

*Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF No. 1.Chen was never employed by

Coco in 2019.[8] (Doc. 19, ¶ 22; Doc. 20-8, at 15, 17, 19). Defendant submits that the factual

record is now closed and reflects that Chen was not was employed by Coco in 2019.[9] (Doc.

19, ¶ 23). Chen's complaint, despite alleging violations of the Fair Labor Standards Act, does

not reference a single averment that his rights were ever violated under said Act.[10] (Doc. 19,

¶ 24); *Chen v. One Coco Nails & Spa, Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF

No. 1.

While Chen was allegedly employed at Coco in 2019, he was earning Ten Dollars

---

Doc. 20-8, at 19-20). Additionally, Chen testified that he was present when Lin was told she was being fired for reporting human trafficking. (Doc. 20-10, at 25)

[7] Plaintiffs deny this fact, arguing that it contradictions paragraph 18 of Coco's statement of facts which states "Lin was let go." (Doc. 24, ¶ 19).

[8] Plaintiffs deny this fact and state that Chen was employed by Coco in late March or early April of 2019 through December 28, 2019. (Doc. 20-10, at 20-21, 48; Doc. 24, ¶ 22).

[9] Plaintiffs deny this fact and state that Chen was employed by Coco in late March or early April of 2019 through December 28, 2019, where he made $10.00 per hour, plus expenses. (Doc. 20-10, at 20-21, 23, 48; Doc. 24, ¶ 23).

[10] Plaintiffs deny this fact and state that it does not contain a factual allegation, instead it contains an incorrect legal conclusion. (Doc. 24, ¶ 24). It is illegal under FLSA 15(a)(3) to retaliate against an employee engaged in protected activity under the Act. (Doc. 24, ¶ 24); *see* 29 U.S.C. § 215(a)(3). Plaintiff made an FLSA retaliation claim. (Doc. 24, ¶ 24).

($10.00) per hour, together with expenses, such as gas and the like. (Doc. 19, ¶ 25; Doc. 20-10, at 23; Doc. 24, ¶ 25). Chen's complaint alleges that because he informed Lin that she was being underpaid, he was terminated. (Doc. 19, ¶ 26; Doc. 24, ¶ 26); *Chen v. One Coco Nails & Spa, Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF No. 1. Defendants aver that, with the now closed and there is no evidence that Lin was underpaid or that she ever complained to Eva or Coco regarding the same.[11] (Doc. 19, ¶ 27).

Paragraphs 35 and 36 of Chen's complaint allege that Coco's conduct in terminating Chen was in retaliation for reporting serious crimes, such as human trafficking. (Doc. 19, ¶ 28; Doc. 24, ¶ 28); *Chen v. One Coco Nails & Spa, Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF No. 1. Numerous calls were received through HSI human trafficking hotline regarding Coco by Chen, including one in February of 2020, months after Lin and Chen allegedly left Coco.[12] (Doc. 19, ¶ 29; Doc. 20-2, at 4-10). After conducting several investigations based upon these calls, the Pennsylvania State Police terminated the investigation, to no avail.[13] (Doc. 19, ¶ 30; Doc. 20-2, at 10).

---

[11] Plaintiffs deny this fact and cite multiple sources on the record demonstrating a lack of record keeping and the number of hours compared to the amount of money Lin was given. (Doc. 24, ¶ 27; Doc. 25-1, at 5-6; Doc. 25-2, at 6-8, 11; Doc. 25-3, at 3-4; Doc. 25-4, at 7). Plaintiffs state that Lin's pay in the amount of $700.00 every two weeks, amounts to $5.33 per hour, with zero overtime pay. (Doc. 19, ¶ 10; Doc. 20-5, at 18; Doc. 24, ¶ 27)

[12] Plaintiffs deny this fact. (Doc. 24, ¶ 29). The February of 2020 tip came from an anonymous source. (Doc. 20-2, at 6).

[13] Plaintiffs deny this fact as stated and contend that it appears that the Pennsylvania State Police opened several investigations, all to case number PA2019-1180845. (Doc. 24, ¶ 30; Doc. 20-2, at 4-10). As of May 22, 2020, the Pennsylvania State Police terminated their investigation at a time when Coco was closed due to the pandemic related mandatory shut down. (Doc. 24, ¶ 30; Doc. 20-2, at 10).

B. <u>PLAINTIFF LIN</u>

This factual background is taken from Plaintiff Lin's statement of material facts and accompanying exhibits. (Doc. 22). Pursuant to Local Rule 56.1, Defendant Coco has provided its response to Lin's statement of facts and has provided accompanying exhibits. (Doc. 26). Where Coco disputes facts and supports those disputes in the record, as required by Local Rule 56.1, those disputes are noted. Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to Coco as the non-moving party, with all reasonable inferences drawn in its favor.

Coco did not record Lin's hours at any time 2017 through 2019.[14] (Doc. 22, ¶ 1; Doc. 22-1, at 5-6). During Lin's employment with Coco, her employee file consisted of a copy of her driver's license and social security card, and nothing else.[15] (Doc. 22, ¶ 2; Doc. 22-2, at 6). During Lin's employment with Coco, Coco never filed a W-4 for Lin because she had asked to be paid in cash.[16] (Doc. 22, ¶ 3; Doc. 22-2, at 7). During Lin's employment with Coco, there were no documents stating her job title which was "doing nails." (Doc. 22, ¶ 4; Doc. 22-

---

[14] Coco denies this statement and states that Eva testified in her deposition that she made a record of the days Lin worked and how much she was paid in 2019, but she did not have the records with her during her deposition. (Doc. 26, ¶ 1; Doc. 26-1, at 11). Further, Coco states that a record has been provided demonstrating Lin and her employment, pay, overtime, and hours worked in 2019. (Doc. 26, ¶ 1; Doc. 26-3, at 2-4).

[15] Coco denies this fact as stated and contends that Eva testified about records that were kept for Lin and a record has been provided. (Doc. 26, ¶ 2; Doc. 26-1, at 11; Doc. 26-3, at 2-4).

[16] Coco denies this fact as stated and argues that "[t]he documents speak for themselves." (Doc. 26, ¶ 3).

2, at 7; Doc. 26, ¶ 4). During Lin's employment with Coco, Coco maintained no written record of how much of her earnings were overtime and how much of her earnings were regular time, but there is a record of how much Lin earned including overtime.[17] (Doc. 22, ¶ 5; Doc. 22-2, at 7). During Lin's employment with Coco, Coco created no paystubs for Lin.[18] (Doc. 22, ¶ 6; Doc. 22-3, at 3). During Lin's employment with Coco, Coco retained no pay checks for Lin.[19] (Doc. 22, ¶ 7; Doc. 22-3, at 4). During Lin's employment with Coco, Coco created no record of any kind relating to payments made to Lin.[20] (Doc. 22, ¶ 8; Doc. 22-3, at 4). The only W-2 created by Coco and relating to Lin, indicates she was paid $2,100.00 for the calendar year 2019.[21] (Doc. 22, ¶ 9; Doc. 22-3, at 12).

During Lin's employment with Coco, Coco was open 7 days a week from 9:00 AM to 7:00 PM. (Doc. 22, ¶ 10; Doc. 22-2, at 7). Most days employees worked from 9:00 AM to 7:00 PM [10 hours], sometimes later.[22] (Doc. 22, ¶ 11; Doc. 22-2, at 7). Coco did not keep a

---

[17] Coco denies this fact as stated and contends that Eva testified about records that were kept for Lin and a record has been provided. (Doc. 26, ¶ 2; Doc. 26-1, at 11; Doc. 26-3, at 2-4).

[18] Coco denies this fact as stated and argues that "[t]he documents speak for themselves." (Doc. 26, ¶ 6). Further, Coco's response to the interrogatory states that there are no paystubs available at this time. (Doc. 22-3, at 3).

[19] Coco denies this fact as stated and argues that "[t]he documents speak for themselves." (Doc. 26, ¶ 7). Further, Coco's response to the interrogatory states that there are no copies of pay checks at this time. (Doc. 22-3, at 4).

[20] Coco denies this fact as stated and contends that Eva testified about records that were kept for Lin and a record has been provided. (Doc. 26, ¶ 8; Doc. 26-1, at 11; Doc. 26-3, at 2-4).

[21] Coco denies this fact as stated and argues that "[t]he documents speak for themselves." (Doc. 26, ¶ 9).

[22] Coco denies this fact as stated and contends that employees of Coco took breaks throughout the day whenever they were not with customers and took lunch up to three (3) times per day. (Doc. 26, ¶ 11; Doc. 26-1, at 8).

separate written record of overtime pay regarding Lin.[23] (Doc. 22, ¶ 12; Doc. 22-2, at 7). Lin generally worked 6 days per week. (Doc. 22, ¶ 13; Doc. 22-4, at 7; Doc. 26, ¶ 13).

Coco never sought advice regarding FLSA compliance however it is aware of the FLSA. (Doc. 22, ¶ 14; Doc. 22-2, at 8). Lin was employed by Coco on April 10, 2019, through December 28, 2019. (Doc. 22, ¶ 15; Doc. 22-2, at 8, 11; Doc. 22-4, at 7; Doc. 26, ¶ 15). From April of 2019 to December 28, 2019, Lin worked 12 out of 14 days every two weeks and was paid $700.00.[24] (Doc. 22, ¶ 16; Doc. 22-4, at 7).

II.   **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding

---

[23] Coco denies this fact as stated and notes a record that includes "overtime hours." (Doc. 26, ¶ 12; Doc. 26-3, at 2-4)

[24] Coco denies this fact as stated. (Doc. 26, ¶ 16). Coco states that Lin was paid One Hundred Dollars ($100.00) per day and once she received her license, she was paid One Hundred Ten Dollars ($110.00) per day. (Doc. 26-2, at 10). A text exchange between Lin and Eva revealed that Lin was hired to start working for Coco April 10, 2019, for One Hundred Dollars ($100.00) per day, which would increase to One Hundred Ten Dollars ($110.00) per day once she received her license, together with tips. (Doc. 26-2, at 9-10). Eva paid her employees Seven Dollars and Twenty-Five Cents ($7.25) per hour for the first eight (8) hours and the last two (2) hours that hourly amount was raised to Twenty-One Dollars ($21.00) as overtime and that her employees collected all the tips but if a customer's tip was below fifteen percent (15%), Eva would make up to fifty percent (50%) of the tip. (Doc. 26-1, at 6-7, 10). Coco's employees also received commissions. (Doc. 22-1, at 9). Tips paid by clients were Lin's and she received tips. (Doc. 22-2, at 11).

a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[25] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation

---

[25] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With respect to cross-motions for summary judgment, "[e]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v. Palakovich,* 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.,* 542 F.3d 1007, 1023 (3d Cir. 2008)). However, a federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell,* 206 F.3d at 278.

III. **DISCUSSION**

A. DEFENDANT COCO'S MOTION FOR SUMMARY JUDGMENT

In its motion, Defendant Coco asserts that it is entitled to summary judgment as to Lin and Chen's claims "as there is no genuine dispute as to any material fact."[26] (Doc. 20, at

---

[26] Coco implies that Plaintiffs' claims have been fabricated by Plaintiff Chen and Plaintiffs' attorney. (Doc. 20, at 9). However, the Court may not make credibility determinations upon deciding a motion for summary judgment. *See Anderson,* 477 U.S. at 249. The Court's role is to determine if a genuine issue of material fact exists as to Plaintiffs' claims.

7). First, Coco contends that Plaintiffs have failed to present evidence that Lin was paid in violation of the FLSA, WPCL, or MWA. (Doc. 20, at 12). Next, Coco argues that Lin was terminated from her position with Coco because of the quality of her work. (Doc. 20, at 13-14). Coco also argues that Chen has failed to assert a cause of action under FLSA in his complaint and that his wrongful termination claims similarly fail as he has provided inconsistent testimony and insufficient evidence to support his claims. (Doc. 20, at 16-21). In response, Plaintiffs contend that Coco did not address Lin's claims for violations of FLSA, that Coco's challenges to her WPCL claim turn on a credibility assessment which must be assessed at trial, that Coco has not presented evidence to refute that it only retained insufficient employment records, and that a factual dispute exists as to how much Lin was paid per hour. (Doc. 25, at 10-13). Finally, Plaintiffs aver that genuine issues of material fact exist as to whether Chen was fired in retaliation for helping Lin in violation of FLSA and in support of his wrongful termination claim. (Doc. 25, at 19-20).

### 1.  FLSA and MWA – Unpaid Wages

First, Defendant Coco argues that Plaintiffs have failed to demonstrate that Lin was paid in violation of the FLSA and MWA.[27] (Doc. 20, at 12). Plaintiffs argue that Coco "has not filed a summary judgment motion with respect to any FLSA claim which Plaintiff . . . Lin

---

Fed. R. Civ. P. 56(a). Any allegations of untruthfulness shall be determined by the fact-finder at the appropriate time.

[27] In her complaint, Lin argues that Coco failed to pay her minimum wage and overtime compensation, failed to maintain adequate and accurate records, and that she is entitled to liquidated damages in violation of the FLSA. (Doc. 1, at 5-6). In its motion for summary judgment, Coco addresses Lin's allegations under the FLSA and MWA regarding minimum wage and overtime requirements. (Doc. 20, at 11-12). As Plaintiffs address the remaining FLSA issues in their motion for partial summary judgment, the Court addresses the support for those claims *infra*. (Doc. 23, at 10-14).

actually filed" and instead combat a FLSA retaliation claim which Lin has not alleged. (Doc. 25, at 10). Plaintiffs also assert that an issue of fact exists as to the amount Lin was paid per hour. (Doc. 25, at 12). As it appears that Coco is challenging Lin's claims under the FLSA and MWA regarding her wage, the Court addresses Lin's claims regarding Coco's failure to pay her minimum wage in violation of 29 U.S.C. § 206, Coco's failure to pay her overtime in violation of 29 U.S.C. § 207, and Coco's failure to pay her minimum wage under the MWA. (Doc. 1, at 5; Doc. 20, at 12).

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). The FLSA was enacted to "protect covered workers from substandard wages and oppressive working hours." *Friedrich v. U.S. Comput. Servs.*, 974 F.2d 409, 412 (3d Cir. 1992). Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (citing 29 U.S.C. §§ 206, 207). The FLSA requires a minimum hourly wage of $7.25. *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 847 (D.N.J. 2019) (citing 29 U.S.C. § 206(a)(1)(C)).

The MWA provides that "[e]very employer shall pay to each of his or her employees' wages for all hours worked at a rate of not less than . . . the minimum wage set forth in the Fair Labor Standards Act of 1938," 43 Pa. Stat. and Cons. Stat. Ann. § 333.104(a.1); and that employees shall receive overtime wages of "not less than one and one-half times" their regular wage for any hours worked over forty hours in a workweek. 43 Pa. Stat. and Cons. Stat. Ann.

§ 333.104(c). "Because of the similarities between the MWA and the FLSA, Pennsylvania courts analyze overtime and minimum wage violations of the MWA and the FLSA under the same framework." *Bansept v. G&M Automotive*, 557 F. Supp. 3d at 584, 590 (citing *Bedolla v. Brandolini,* No. 18-146, 2018 WL 2291117, at *4, at *10 (E.D. Pa. May 18, 2018); *Ford-Greene v. NHS, Inc.,* 106 F. Supp. 3d 590, 612 (E.D. Pa. 2015)).

Under 29 U.S.C. § 203, a tipped employee must make the minimum wage of $7.25, however, a "tip credit" may be employed to reach the minimum wage amount. *See Sicklesmith v. Hershey Entertainment & Resorts Co.*, 440 F. Supp. 3d 391, 396-97 (M.D. Pa. 2020). Additionally, "Section 103(d) of the [MWA], known as the "tip credit" provision, permits an employer to pay tipped employees an hourly wage substantially lower than the minimum wage by taking a 'credit' for the amount of tips received by the employee. *Livi v. Hyatt Hotels Corp.,* 751 F. App'x 208, 212 (3d Cir. 2018) (quoting 43 Pa. Stat. § 333.103(d)). "A 'tipped employee' is 'any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips.'" *Platek v. Duquesne Club*, 961 F. Supp. 831, 832 (W.D. Pa. 1994) (quoting 29 U.S.C. § 203(t)). A "tip credit" "represents the difference between the Pennsylvania minimum wage of $7.25 per hour and the Pennsylvania hourly tipped minimum wage of $2.83 per hour." *Sicklesmith*, 440 F. Supp. 3d at 397 (citing 29 U.S.C. § 203(m)); *see* 34 Pa. C.S. § 231.101(b). If a tipped employee does not earn enough tips to meet the threshold minimum hourly wage of $7.25, the employer must pay the difference. *See Sicklesmith,* 440 F. Supp. 3d at 397.

Coco argues that Lin has failed to provide any evidence to support that she was paid in violation of the FLSA or MWA. (Doc. 20, at 12). Lin testified in her deposition that she

earns $700.00 every two weeks along with tips. (Doc. 20, at 11; Doc. 20-5, at 18-19). Lin also testified that she worked 12 days out of a 14-day week. (Doc. 25, at 12; Doc. 25-4, at 7). Coco was open from 9:00 AM to 7:00 PM and most employees worked for the entire day. (Doc. 25, at 12; Doc. 20-8, at 7-10; Doc. 25-2, at 7). Lin would generally work 60 hours in one week and 120 hours over two weeks as she worked six days a week for 10 hours a day. (Doc. 25, at 12; Doc. 25-4, at 7). Thus, assuming Lin worked 120 hours every two weeks and was paid $700.00 every two weeks, her hourly salary was $5.83 per hour including overtime compensation. (Doc. 25, at 13; Doc. 20-5, at 18-19; Doc. 25-4, at 7). In her deposition, Eva stated that she paid her employees $7.25 per hour for the first eight hours and $21.00 for the last two as overtime in a ten-hour work day. (Doc. 19, ¶ 12; Doc. 20-8, at 8-9, 12). Additionally, Eva testified that her employees would receive a commission if they performed a spa pedicure ranging from an extra $5.00 to $20.00. (Doc. 20-8, at 11). Further, an employment record provided by Coco indicated that Lin usually worked six days a week for over 40 hours per day. (Doc. 26-3, at 2-4). The record also demonstrated that for the first 40 hours, Lin was paid at a rate of $7.25 an hour, and for any hours over 40 she was paid at a rate of $17.22 per hour, $21 per hour, or $26.25 per hour. (Doc. 26-3, at 2-4). Lin's testimony regarding how much she earned, Eva's testimony regarding how much she paid her employees, and Lin's employment record create a question of fact regarding Lin's salary and overtime compensation.

Additionally, Lin stated that she received tips paid in cash from her clients. (Doc. 20-5, at 19). Thus, Coco could have utilized a "tip credit" to meet the threshold minimum wage requirements under the FLSA and MWA if Lin was only receiving $700.00 every two weeks.

*See* 29 U.S.C. §203(m)). Lin stated that she earned $700.00 every two weeks along with tips. (Doc. 20-5, at 18-19). Eva stated that her employees collected all the tips but if a customer's tip was below fifteen percent, Eva would remedy the difference in the tip up to fifty percent. (Doc. 19, ¶ 12; Doc. 20-8, at 8-9, 12). Even taking Eva's testimony regarding tips as true, it is unclear the amount that she would compensate her employees if the tips were insufficient and if such compensation would meet the minimum wage requirement. Additionally, there is no indication on the record regarding how much Lin was tipped per week and the Court cannot discern whether she qualifies as a tipped employee per 29 U.S.C. § 203(t)). Thus, a question material fact exists as to how much Lin received in tips per month and whether Lin's $700.00 wage included overtime compensation and tips. A question of material fact exists as to Lin's FLSA and MWA claims regarding payment of minimum wage and overtime.

Summary judgment shall be DENIED regarding Lin's FLSA and MWA claims.

### 2. FLSA – Retaliation

Defendants contend that there is no question of material fact as to Chen's FLSA retaliation claim. (Doc. 20, at 15-16). Specifically, Defendants aver that Chen does not allege that his rights were violated under the FLSA as he was earning $10.00 an hour along with compensation for expenses such as gas. (Doc. 20, at 16). In response, Plaintiffs state that Chen "was fired in retaliation for helping his coworker." (Doc. 25, at 19).

The FLSA states that it is unlawful to "discharge or in any matter discriminate against an employee because that employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *See* 29 U.S.C. § 215(a)(3). "The anti-retaliation provision of the FLSA[] is interpreted liberally and protects a wide range of

actions." *Cohen,* 419 F. Supp. 3d at 850 (quoting *Brock v. Richardson*, 812 F.2d 121, 123 (3d Cir. 1987). To present an FLSA retaliation claim, a plaintiff must demonstrate that a "Defendan[t] retaliated against him for invoking its terms." *Berrada v. Cohen*, 792 F. App'x 158, 164 (3d Cir. 2019).

"The elements of a retaliation claim under the FLSA require, at a minimum, a showing that: (1) the plaintiff engaged in a statutorily protected activity; (2) the employer took adverse action subsequent to, or contemporaneous with, such employee activity; and (3) there is a causal connection between such activity and the employer's action." *Dougherty v. Ciber, Inc.,* No. CIV.A.1:04-CV-1682, 2005 WL 2030473, at *2 (M.D. Pa. July 26, 2005) (citing *Kachmar v. SunGard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1997) (discussing elements of discriminatory retaliation in context of Title VII claim); *Claudio-Gotay v. Becton Dickinson Caribe, Ltd.*, 375 F.3d 99, 102 (1st Cir. 2004) (listing the same elements for a retaliation claim under the FLSA)).

Under the FLSA, a protected activity includes "fil[ing] any complaint or institut[ing] or caus[ing] to be instituted any proceeding under or related to [the FLSA]." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (citing 29 U.S.C. § 215(a)(3)); *see also Hagan v. Echostar Satellite, L.L.C.,* 529 F.3d 617 626 (5th Cir. 2008) (to engage in protected activity, a plaintiff must make a "complaint"). In some instances, an oral complaint may constitute a protected activity. *See Kasten v. Saint–Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). "[A]n informal oral complaint made by an employee to a supervisor constitutes protected activity within the meaning of the statute. *Bedolla*, 2018 WL 2291117, at *3 (examining *Kasten*, 563 U.S. at 17). An oral complaint must put the employer "on notice of a

claim under the FLSA [and] be sufficiently clear and detailed so as to demonstrate that the employee is asserting rights protected by the FLSA." *Cohen*, 419 F. Supp. 3d at 850 (quoting *Kasten*, 563 U.S. at 14). However, an oral complaint to a co-worker is insufficient to establish a protected activity. *Whited v. New Cafe at Greystone Gardens*, No. CV 3:18-1811, 2020 WL 1271681, at *6 (M.D. Pa. Mar. 17, 2020) (finding plaintiff's oral complaint to co-worker did not qualify as protective activity where plaintiff did not assert belief that employer taking portion of her tips was illegal and never mentioned the FLSA or any other act who would assert her rights).

Here, Coco asserts that Chen testified that he was earning $10.00 per hour along with gas and other expenses, which is not in violation of the FLSA. (Doc. 20, at 16; Doc. 20-10, at 23). Further, Coco argues that although Chen claims that he informed Lin that she was being underpaid, neither he nor Lin informed Coco of their complaints regarding their pay. (Doc. 20, at 16; Doc. 20-10, at 53).  In his deposition, Chen stated that he was terminated from his position at Coco because he reported Coco to the police for human trafficking and was helping Lin. (Doc. 20-10, at 43-44, 48-49 53-56). Plaintiffs claim that Chen invoked his rights under the FLSA by informing Lin of her rights. (Doc. 25, at 18-19). However, Chen has failed to present any facts that demonstrate that he was terminated from his position by complaining to Coco about its violation of the FLSA regarding his wage or Lin's wage. *See Whited,* 2020 WL 1271681, at *6 ("Essentially, all plaintiff told her co-worker was that she was dissatisfied with a working condition. Such a complaint would not serve as notice to an employer that an individual was asserting rights under the FLSA."); *Berrada*, 792 F. App'x at 164 (to present an FLSA retaliation claim, a plaintiff must demonstrate that a "Defendan[t] retaliated against

him for invoking its terms). Thus, Chen has failed to demonstrate a genuine issue of material fact that he was retaliated against for invoking the terms of the FLSA.

In their brief in opposition, Plaintiffs discuss a Fifth Circuit case holding that "[t]he FLSA's retaliation provision also covers complaints brought by one employee on behalf of another employee." (Doc. 25, at 18-19); *Starnes v. Wallace*, 849 F.3d 627, 632-34 (5th Cir. 2017). In *Starnes*, the court found that a factual dispute existed as to whether the plaintiff alleged that she engaged in a protected activity regarding an FLSA claim. 849 F.3d at 632-34. There, a maintenance worker's wife relayed her concerns regarding the maintenance worker's overtime and travel pay to her manager. *Starnes*, 849 F.3d at 630. The manager then voiced two separate complaints on behalf of the couple that the company was failing to pay the husband for his travel and overtime; one to HR and the other to the president of the company. *Starnes*, 849 F.3d at 632. The Fifth Circuit found that the manager "unequivocally express[ed] the view that her employer was violating the law." *Starnes*, 849 F.3d at 633. Here, there is no evidence on the record that Chen notified anyone in a managerial position that Lin was being underpaid. Although Plaintiffs contend that Coco was "aware of [Chen] aiding [Lin] regarding her wages because [Kenny] told him that over the phone" there is no indication on the record that any kind of complaint was made to anyone at Coco.[28] (Doc. 25, at 19); *Whited v. New Cafe at Greystone Gardens*, No. CV 3:18-1811, 2020 WL 1271681, at *6. A genuine issue of material fact does not exist regarding Chen's claims for FLSA retaliation.

---

[28] In his deposition, Chen explained that Kenny is Eva's husband and was responsible for paying the employees, and was in a managerial position. (Doc. 25-5, at 11).

Summary judgment shall be GRANTED regarding Chen's FLSA retaliation claim in favor of Coco.

### 3. WPCL

Next, Coco contends that a genuine issue of material fact does not exist regarding Lin's claims regarding her wage under the WPCL.[29] (Doc. 20, at 10-12). Plaintiffs argue that Coco fails to make any "real argument upon which judgment should be granted" and that any issue regarding Lin's credibility should be challenged at trial. (Doc. 25, at 11).

The WPCL provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (1997). The WPCL "does not create a right to compensation . . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." *Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir. 1996) (quoting *Weldon v. Kraft, Inc.,* 896 F.2d 793, 801 (3d Cir.1990)); *see also De Asencio,* 342 F.3d at 309, *as amended* (Nov. 14, 2003); *Lehman v. Legg Mason, Inc.,* 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007); *Oberneder v. Link Computer Corp.*, A.2d 148, 150 (1997) ("The [WPCL] provides employees a statutory remedy to recover wages and other benefits that are contractually due to them."). Pennsylvania Courts have instructed that "[t]o present a [WPCL] wage-payment claim, [plaintiff] ha[s] to aver that

---

[29] In her complaint, Lin argues that Coco failed to pay her minimum wage and overtime compensation, failed to maintain adequate and accurate records, and that she is entitled to liquidated damages in violation of the WPCL. (Doc. 1, at 7-8). In its motion for summary judgment, Coco addresses Lin's allegations under the WPCL regarding her wage. (Doc. 20, at 12). As Plaintiff Lin asserts in her motion for partial summary judgment that summary judgment should be granted in her favor regarding her claims under the WPCL for overtime the Court addresses this claim *infra*. (Doc. 23, at 17-18).

he was contractually entitled to compensation from wages and that he was not paid." *Bansept v. G & M Auto.,* 434 F. Supp. 3d 253, 260 (E.D. Pa. 2020) (citing *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Super. Ct. Pa. 2005)). "When there is no formal written employment contract, a plaintiff bringing a WPCL claim 'would have to establish, at a minimum, an implied oral contract between the employee and employer.'" *Garcia v. Vertical Screen*, No. CV 19-3184, 2022 WL 829767, at *10 (E.D. Pa. Mar. 21, 2022) (quoting *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (Pa. Super. Ct. 2011)); *see also De Asencio*, 342 F.3d at 309.

Coco states that Eva hired Lin at a rate of $100.00 per day. (Doc. 20, at 12). Coco presents a text exchange between Eva and Lin regarding her salary. (Doc. 20-5, at 18). In the exchange, Eva states that at first Lin would receive $100.00 per day and then once she obtained her license she would receive $110.00 per day. (Doc. 20-5, at 18). It is unclear if Plaintiffs assert that this exchange is an implied contract between Coco and Lin. However, considering this exchange to be an agreement between Coco and Lin, Lin's contract dictated a payment of $100.00 per day. (Doc. 20-5, at 18). If Lin was being paid $100.00 per day and working six days per week, she should have been paid $1,200.00 every two weeks. (Doc. 20-5, at 18; Doc. 25-4, at 7). Lin stated that she was receiving $700.00 every two weeks in addition to tips. (Doc. 20-5, at 18-19). At a rate of $100.00 per day, Lin would have been working seven days every two weeks. (Doc. 20-5, at 18). However, Lin testified that she would usually work 12 days every two weeks. (Doc. 25-4, at 7). Thus, a question of fact exists regarding whether Lin was receiving the agreed-upon compensation under her agreement with Coco.

An issue of material fact exists regarding Lin's WPCL claims and summary judgment shall be DENIED.

### 4. Wrongful Termination

Next, Defendant Coco argues that Plaintiffs have failed to demonstrate a question of fact as to Plaintiff Lin or Chen's wrongful termination claim. (Doc. 20, at 12-14, 16-21). Defendants contend that Lin was terminated from her employment with Coco due to her unsatisfactory work at the nail salon. (Doc. 20, at 13). Defendants also state that Chen's complaint "is devoid of any facts that would allow Coco to properly defend [his] serious allegatio[n]" that Chen was wrongfully terminated in retaliation for his reporting of Coco to the police for human trafficking.[30] (Doc. 20, at 18). In response, Plaintiffs state that Lin was terminated from her position because she reported Coco to the police for human trafficking. (Doc. 25, at 16). Plaintiffs also state that Chen engaged in a protected activity "when he vindicated [Lin's] FLSA rights, when he reported human trafficking, and when he made a 911 call on December 28, 2019." (Doc. 25, at 20). Further, Plaintiffs state that Chen suffered an adverse action when he was terminated from his position due to his protected activity. (Doc. 25, at 20).

Under Pennsylvania law, an at-will employee may be terminated "for good reason, bad reason, or no reason at all." *Hershberger v. Jersey Shore Steel Co.*, 394 Pa. Super. 363, 575 A.2d 944, 946 (1990) (citing *Henry v. Pittsburgh & Lake Erie Railroad Co.*, 139 Pa. 289 (1891)).

---

[30] Coco also "adamantly disputes that [Chen] was employed by Coco at any time in 2019," however, the Court finds that Plaintiffs have failed to present evidence that they were wrongfully terminated and does not address Coco's contentions regarding Chen's employment with Coco. (Doc. 20, at 14).

"Nevertheless, an employer's privilege to dismiss an employee . . . may be qualified by the dictates of public policy." *Spyridakis v. Riesling Group, Inc.*, No. 09-1545, 2009 WL 3209478, at *7 (E.D. Pa. Oct. 6, 2009) (quoting *Weaver v. Harpster*, 975 A.2d 555, 563 (2009) ). Such exceptions are construed narrowly and are set forth as follows: "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 111 (3d Cir. 2004) (quoting *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa Super. Ct. 1998); *see also Parker v. Sch. Dist. of Philadelphia*, 346 F. Supp. 3d 738, 752 (E.D. Pa. 2018). Further, "Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." *Fraser,* 352 F.3d at 111.

In her deposition, Lin stated that her employment ended because Eva was not satisfied with her work. (Doc. 20-5, at 19). Further, Lin testified that if Eva had not let her go, she would have continued to work there. (Doc. 20-5, at 20). Although not explicitly clear, it seems Lin conveyed that she was terminated from her position at Coco due to the quality of her work. (Doc. 20-5, at 19-20). Thus, the record demonstrates that Lin was terminated from her position due to the quality of work. (Doc. 20-5, at 19-20).

However, in his deposition, Chen states that he was present when Lin was fired and heard Eva tell Lin that "she was the one that reported the human trafficking case." (Doc. 25-5, 16). Chen also stated that the week before, Eva and Lin had been in an argument regarding the quality of Lin's work. (Doc. 25-5, at 16). Additionally, in her complaint, Lin states that

- 23 -

she was terminated "in retaliation for [her] perceived exercise of her legal right to report a crime." (Doc. 1, at 10). Chen also stated in his complaint that he was fired because he reported Coco for human trafficking to the police and helped Lin regarding her employment and reiterated these facts in his deposition.[31] *Chen v. One Coco Nails & Spa, Inc.,* No. 3:21-CV-00415 (M.D. Pa. March 8, 2021), ECF No. 1; (Doc. 25, at 20; Doc. 20-10, at 44, 49). In their brief in opposition, Plaintiffs cite a multitude of cases recognizing public policy exceptions to the at-will employment doctrine, however, none of these cases involve the reporting of a crime to the police.[32]

"[A] wrongful discharge claim is not permitted based upon a plaintiff reporting alleged wrongful or illegal activity. *Spyridakis v. Riesling Grp., Inc.,* 398 F. App'x 793, 799 (3d Cir. 2010) ("*Spyridakis 2*"); *see also Fraser,* 352 F.3d at 112 ("Pennsylvania courts 'have repeatedly rejected claims that a private employer [as opposed to a public employer] violated public policy by firing an employee for whistleblowing, when the employee was under no legal duty

---

[31] As discussed *supra,* Chen's allegation that he invoked his FLSA rights when he informed Lin that she was being underpaid is not supported and shall be dismissed.

[32] Plaintiffs cite section 3(a) of the Pennsylvania Whistleblower Law that states "[n]o employer may discharge . . . an employee . . . because the employee . . . makes a good faith report . . . to the employer or appropriate authority an instance of wrongdoing or waste by a public body." 43 Pa. Stat. Ann. § 1423(a); (Doc. 25, at 15). However, because Plaintiffs allege that Coco "committed an instance of 'wrongdoing,'. . . [Coco] must qualify as a 'public body.'" *Eaves-Voyles v. Almost Family, Inc.,* 198 F. Supp. 3d 403, 407 (M.D. Pa. July 27, 2016). "A 'public body'" includes government officers, political authorities, and any other body which is created or 'which is funded in any amount by or through Commonwealth or political subdivision authority. *Eaves-Voyles,* 198 F. Supp. 3d at 407 (citing 43 P.S. § 1422). As Coco is a private business and Plaintiffs do not aver otherwise, Coco cannot be considered a public body and the Pennsylvania Whistleblower statute does not apply. *See Fraser v. Nationwide Mut. Ins. Co.,* 352 F.3d 107, 112 n. 5 (3d Cir. 2003) ("The Pennsylvania Whistleblower's Law, 43 Pa. Cons. Stat. § 1421, *et seq.,* does not apply to private employers."); *see also Donahue v. Fed. Express Corp.,* 753 A.2d 238, 244 (Pa. Super. Ct. 2000)

to report the acts at issue.'") (quoting *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 244 (Pa. Super. Ct. 2000)). In *Spyridakis*, the Third Circuit held that an employee that was discharged for reporting unlawful conduct to the government failed to plead a wrongful termination claim. 398 F. App'x at 799-800. Additionally, in *Fraser*, the Third Circuit found that an employee that was discharged for reporting his employer's illegal activities failed to demonstrate a wrongful termination claim as he "presented no evidence that [his employer] directed him to commit any crime, nor ha[d] he pointed [the court] to any statutory duty to report [his employer's] violations of the law." 352 F.3d at 112. A plaintiff must explain how the applicable exception "create[s] a clear mandate of public policy that was implicated by [his or] her termination." *See Spyridakis 2*, 398 F. App'x at 800; *see also Lane v. Forever of PA, Inc.*, No. 3:15-62, 2015 WL 9581864, at *6 (W.D. Pa. Dec. 30, 2015). Plaintiffs have not presented any evidence regarding Coco's direction to commit a crime nor have they indicated what policy would require them to report any crimes committed by Coco. Thus, even if Plaintiffs had presented sufficient questions as to the nature of their termination, they have failed to present evidence that Lin or Chen possessed a legal duty to report the alleged human trafficking by Coco. No genuine issue of material fact exists regarding Lin and Chen's wrongful termination claims.

Therefore, summary judgment shall be GRANTED in favor of Coco regarding Lin and Chen's wrongful termination claims.

B. Plaintiff Lin's Motion for Partial Summary Judgment

In her motion for partial summary judgment, Plaintiff Lin argues that she is entitled to summary judgment for her claims regarding (1) the recordkeeping provisions of the FLSA

and MWA, (2) the overtime requirements of the FLSA, (3) liquidated damages, (4) Coco's willful actions under the FLSA, (4) and the violations of the WPCL.[33] (Doc. 23, at 12-18). Defendant Coco argues that a genuine issue of material fact exists as to Plaintiff Lin's claims and that summary judgment is not appropriate. (Doc. 28, at 7-14).

### 1. Record Keeping Requirements

Lin contends that "[t]here is no factual dispute whatsoever that the only employment records retained by [Coco] were a copy of [Lin's] driver's license and social security card . . . [and that t]he defendant did not keep any wage and hour records of any kind." (Doc. 23, at 13). Coco responds that Eva testified that she had Lin's employment records at another location and provided Plaintiffs with the documents requested pertaining to Lin's employment in 2019.[34] (Doc. 28, at 8-9).

---

[33] Plaintiff Lin notes that a genuine issue of material fact exists as to her minimum wage claim and that summary judgment is not appropriate on this issue. (Doc. 23, at 18). As discussed *supra*, the Court finds that a genuine issue of material fact exists as to Lin's minimum wage claims under the FLSA, WPCL, and MWA, and summary judgment shall be denied regarding these claims. Further, Plaintiff Lin withdraws her claim for injunctive relief. (Doc. 23, at 18). As such, Plaintiff Lin's request for injunctive relief is WITHDRAWN. (Doc. 1, at 8-9).

[34] Coco also argues that "[r]ecord violations under the FLSA and MWA are used for burden shifting and evidentiary purposes [and] do not, in and of themselves, establish damages to a Plaintiff." (Doc. 28, at 7). The Court notes that when a defendant employer fails to keep accurate or adequate records regarding a plaintiff's employment, "the burden still rests with the plaintiff to 'prove that he has in fact performed work for which he was improperly compensated.'" *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 312 (E.D. Pa. 2010) (citing *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946) *superseded by statute on other grounds)*. As a question of fact exists regarding whether Lin's minimum wage claims under the FLSA, the Court addresses Lin's arguments regarding the record keeping requirements under the FLSA. *See Perez v. Am. Future Sys., Inc.,* No. CV 12-6171, 2015 WL 8973055, at *14 (E.D. Pa. Dec. 16, 2015) (finding that FLSA recordkeeping claims are justiciable).

Under the FLSA, a recordkeeping requirement is imposed upon employers. *See* 29 U.S.C. § 211(c). The FLSA requires employers to "make, keep, and preserve" accurate employment records "to ensure that all workers are paid the minimum wage for every hour worked." *Williams v. Tri-County Growers, Inc.,* 747 F.2d 121, 128 (3d Cir. 1984) (citing *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir. 1966)); 29 U.S.C. § 211(c). "The burden to keep accurate wage and time records lies with the employer." *Perez v. Am. Future Sys., Inc.,* No. CV 12-6171, 2015 WL 8973055, at *14 (E.D. Pa. Dec. 16, 2015), *aff'd sub nom. Sec'y United States Dep't of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420 (3d Cir. 2017) (citing *Dole v. Solid Waste Serv., Inc.,* 733 F. Supp. 895, 924 (E.D. Pa. 1989)). Sections 516.2(a) and 516.5(a) of the FLSA regulations require that every employer maintain and preserve for at least three years payroll or other records that contain 12 specifically enumerated items of information regarding each employee. Included in those 12 items are:

(a) the employee's full name (§ 516.2(a)(1));

(b) the employee's home address including zip code (§ 516.2(a)(2));

(c) the employee's date of birth if the employee s under 19 years of age (§ 516.2(a)(3));

(d) the employees' sex and occupation (§ 516.2(a)(4));

(e) the hours worked each workday and total hours worked each workweek (§ 516.2(a)(7));

(f) the total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of overtime compensation (§ 516.2(a)(8)); and

(g) the total premium pay for overtime hours (§ 516.2(a)(9)).

*See* 29 C.F.R. § 516.2(a)(1)–(12).

Lin states that "[t]here is no factual dispute whatsoever that the only employment records retained by the defendant were a copy of [Lin's] driver's license and social security card. [Coco] did not keep any record of the amounts paid to employees." (Doc. 23, at 13; Doc. 22, ¶ 2; Doc. 22-2, at 6). However, Coco denies this statement and points to Eva's testimony that she made a record of the days Lin worked and how much she was paid in 2019, but that she did not have the records with her during her deposition. (Doc. 28, at 8; Doc. 26, ¶ 1; Doc. 26-1, at 11). Further, Coco states that a record has been provided demonstrating Lin's employment in 2019. (Doc. 26, ¶ 1; Doc. 26-3, at 2-4). The record produced by Coco spans from April 14, 2019, through December 28, 2019. (Doc. 26-3, at 2-4). The record includes the number of days Lin worked, the number of regular hours she worked each week, the number of overtime hours she worked each week, her gross earnings, whether she was paid in cash or check, and the date she was paid. (Doc. 26-3, at 2-4). As Coco has demonstrated that records were kept regarding Lin's hours and salary, a genuine issue of material fact exists as to whether Coco satisfied the record keeping requirements under the FLSA.

Summary judgment shall be DENIED regarding Lin's recordkeeping claims.[35]

## 2. Overtime Requirements under the FLSA and WPCL

As discussed *supra*, "the FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Symczyk*, 133 S.Ct. at 1527. An employer "must pay one and one-half times the employer's regular wage for hours worked

---

[35] As the Court finds that Plaintiff Lin is not entitled to summary judgment for her claims under the FLSA, the Court declines to address whether she is entitled to liquidated damages or whether Coco's conduct was in willful violation of the FLSA.

in excess of forty hours per week." *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 241 (3d Cir. 2014) (citing 29 U.S.C. § 207). Employers who violate these provisions are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Davis,* 765 F.3d at 241 (citing 29 U.S.C. § 216(b)). To recover overtime compensation under the FLSA, "an employee must prove that he worked overtime hours without compensation, and he must show the amount and extent of his overtime work as a matter of just and reasonable inference." *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.1986) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).

"In order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege [forty] hours of work in a *given* workweek *as well as* some uncompensated time in excess of the [forty] hours." *Davis,* 765 F.3d at 241 (applying the standard set forth in *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013) (emphases in original) (citing 29 U.S.C. § 207(a)(1) (requiring that, "for a workweek longer than forty hours," an employee who works "in excess of" forty hours shall be compensated time and a half for the excess hours)).

Additionally, as discussed *supra*, "the WPCL 'does not create a right to compensation . . . . [r]ather, it provides a statutory remedy when the employer breaches a contractual obligation to pay earned wages." *De Asencio,* 342 F.3d at 309 (citing *Antol*, 100 F.3d at 1117. Further, "the contract between the parties governs in determining whether specific wages are earned." *De Asencio*, 342 F.3d at 309 (citing *Antol*, 100 F.3d at 1117). "43 P.S. § 260.2a of the WPCL defines wages as all earnings, fringe benefits and wage

- 29 -

supplements, and states that fringe benefits or wage supplements are 'all monetary employer payments to provide benefits under any employee benefit plan . . . as well as separation, vacation, holiday, or guaranteed pay; reimbursement for expenses; union dues withheld from the employees' pay by the employer; and any other amount to be paid pursuant to an agreement to the employee.'" *Rosario v. First Student Mgmt. LLC*, No. CV 15-6478, 2016 WL 4367019, at *7 (E.D. Pa. Aug. 16, 2016) (citing 43 P.S. § 260.2a).

Lin contends that she was paid $700.00 every two weeks, worked twelve days every two weeks, and that Coco was open 10 hours a day. (Doc. 20, at 11; Doc. 20-5, at 18-19; 25-4, at 7). However, Lin's employment record indicates that she consistently worked more than 40 hours per week, but was compensated for the number of overtime hours that she worked. (Doc. 26-3, at 2-4). For example, the employment record indicates that Lin was paid $600.00 on April 21, 2019, when she worked 6 days of the week for 40 hours earning $290.00 and 18 hours earning $310.00. (Doc. 26-3, at 2). Further, Eva stated that she paid her employees $7.25 per hour for the first eight hours and $21.00 for the last two as overtime in a ten-hour work day and that Lin was compensated in the same manner. (Doc. 19, ¶ 12; Doc. 20-8, at 8-9, 12). Thus, a question of fact exists regarding how much Lin was compensated for the hours she worked and if this compensation complied with the overtime requirements of the FLSA.

Additionally, there is no allegation that a contract or implied agreement existed between Coco and Lin regarding overtime. Coco states that Eva hired Lin at a rate of $100.00 per day. (Doc. 20, at 12). Coco presents a text exchange between Eva and Lin regarding her salary. (Doc. 20-5, at 18). In the exchange, Eva states that at first Lin would receive $100.00 per day and then once she obtained her license she would receive $110.00 per day. (Doc. 20-

5, at 18). Thus, it would appear that the implied agreed-upon amount between Coco and Lin was $100.00 per day. (Doc. 20-5, at 18). However, this agreement does not outline an overtime policy and it is unclear from the record whether any contractual agreement regarding overtime existed. *See Oxner v. Cliveden Nursing & Rehabilitation Ctr. PA, L.P.*, 132 F. Supp. 3d 645, 650-51 (E.D. Pa. 2015) (finding that a Plaintiff failed to demonstrate that she was entitled to overtime pay for additional work when there was no indication that Defendants intended to obligate themselves to pay her an overtime wage). Thus, a question of fact exists as to the amount Lin was paid, if that pay included overtime, if her pay met the minimum overtime requirements, and if her overtime pay followed a contract between Lin and Coco.

Summary judgment shall be DENIED regarding Lin's claims for overtime under the FLSA and the WPCL.

IV.   **CONCLUSION**

For the reasons set forth herein:

1. Defendant Coco's motion for summary judgment is **GRANTED in part and DENIED in part**. (Doc. 18). Defendant Coco's motion for summary judgment is **GRANTED** regarding Plaintiff Chen's FLSA retaliation claim and Plaintiffs' wrongful terminations claims. Defendant Coco's motion for summary judgment is **DENIED** regarding Plaintiff Lin's FLSA, MWA, and WPCL claims;

2. Plaintiff Lin's motion for summary judgment is **DENIED**. (Doc. 21);

3. Plaintiff Chen's claims are **DISMISSED WITH PREJUDICE** and judgment is entered in favor of Defendant Coco and against Plaintiff Chen.

An appropriate Order follows.

Dated: August 29, 2022                    *s/ Karoline Mehalchick*
                                          **KAROLINE MEHALCHICK**
                                          **Chief United States Magistrate Judge**

- 31 -